UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | No. 3:11-cv-00253 ) ) |
| 1ST TRUST TITLE, INC., D. MARK LINEBERRY, and L. KEITH WORSHAM, | ) JUDGE SHARP ) MAGISTRATE JUDGE BROWN ) ) |
| Defendants. | ) ) |

## MEMORANDUM

Plaintiff Fidelity National Title Insurance Company ("Fidelity" or "Plaintiff") filed a Motion for Partial Summary Judgment (Docket Entry No. 25), to which Defendant D. Mark Lineberry filed a response (Docket Entry No. 34), and Plaintiff filed a reply (Docket Entry No. 49). For the reasons discussed herein, the Court will grant Plaintiff's motion for partial summary judgment as to liability.

## FACTS

In August 2008, Lineberry was the owner and manager of corporate entities that owned real property located at 301 and 315 Union Street in Nashville.[1] At the time, the property was encumbered by a deed of trust held by HMAC 99-PH1 Union Street Office, LLC ("HMAC"). Lineberry entered an agreement with Branch Banking & Trust Company

---

[1] Unless otherwise noted, the facts are drawn from Fidelity's statement of material facts (Docket Entry No. 26), the related declarations and exhibits, and Lineberry's response thereto (Docket Entry No. 36). Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. ZenithRadio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

("BB&T") for an $18.7 million loan secured by the property and contingent on the payment of the HMAC trust deed. Two weeks before the escrow closing on the BB&T loan, Lineberry prepared an Owner's Affidavit and Agreement ("Owner's Affidavit") stating that he was not aware of any liens on the property. By its own terms, the Owner's Affidavit was prepared for the purpose of inducing Fidelity to issue a title insurance policy and with knowledge that Fidelity would rely on the truth of the statements therein. The Owner's Affidavit further states that Lineberry would indemnify and hold Fidelity harmless from any loss arising from inaccuracies within the affidavit. Furthermore, as part of the loan closing, Lineberry executed a deed of trust that would "remain a valid and enforceable first lien" on the property. (Docket Entry No. 30-1, at 9.) In underwriting the title insurance policy, Fidelity relied on the representation that Lineberry would satisfy the HMAC deed of trust at closing and obtain a release of HMAC's lien. Fidelity used 1st Trust Title, Inc. ("1st Trust"), of which Lineberry was president and attorney, as its issuing title agent.

When the BB&T loan closed on August 29, 2008, the HMAC lien was not paid in full and instead remained an encumbrance on the property. Following the closing, Lineberry continued to remit monthly payments on the HMAC deed of trust. Nonetheless, on Fidelity's behalf, Lineberry had several date-down endorsements issued to BB&T as part of the title insurance policy, all continuing to represent that there were no liens or encumbrances on the insured property. Fidelity did not learn about the status of the HMAC lien until June 2010. Lineberry subsequently filed for bankruptcy, and HMAC brought an adversary proceeding in the bankruptcy court.

2

Case 3:11-cv-00253   Document 55   Filed 10/21/11   Page 2 of 6 PageID #: 1131

# ANALYSIS

Fidelity's amended complaint (Docket Entry No. 10) pleads ten causes of action and names 1st Trust, Lineberry, and L. Keith Worsham, an officer in the corporate holding entities that owned the real property, as defendants. The Clerk of Court has already entered default against 1st Trust. (Docket Entry No. 23.) By the present motion, Fidelity seeks summary judgment against Lineberry on its causes of action for intentional misrepresentation and negligent misrepresentation.

## I.  Summary Judgment Standard

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Covington v. Knox County School Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue

3

exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. Intentional Misrepresentation

To make out a claim for intentional misrepresentation, Fidelity must show all the following elements:

> 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008) (quoting *Metro Gov't of Nashville & Davidson Cnty. v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992)).

In this case, Lineberry admits almost all of the undisputed facts set forth by Fidelity, with only two exceptions. As to Fidelity's factual allegations of reliance, Lineberry cites a lack of personal knowledge but submits no contravening evidence. Lineberry disputes and demands strict proof of Fidelity's allegation of financial harm resulting from Lineberry's actions.

Fidelity's factual allegations, admitted by Lineberry and adequately supported by the record, are sufficient to award summary judgment as to liability on the claim for intentional misrepresentation. Through the Owner's Affidavit, Lineberry represented to Fidelity that there were no outstanding liens or deeds of trust on the property. That representation was false because the HMAC lien remained outstanding through the closing of the BB&T loan. The representation concerned a material fact because Fidelity relied on the truth of the statements in

4

the Owner's Affidavit in underwriting its title insurance policy. Lineberry made the representation knowingly and without belief in its truth, as evidenced by his subsequent, ongoing payments to HMAC to satisfy its lien. The plain language of the Owner's Affidavit establishes Fidelity's reliance on the statements therein, and Fidelity's reliance on the statements within the notarized affidavit was reasonable.

Lineberry's only argument in opposition to summary judgment is that Fidelity's claim will not ripen until the bankruptcy court resolves HMAC's adversary proceeding, thus determining whether Fidelity has suffered any actual damage for Lineberry to indemnify. In fact, however, the HMAC adversary proceeding has recently settled, with the bankruptcy court allowing HMAC a fully secured claim. (*See* Docket Entry No. 49-1, Exhibit 3.) Because Fidelity underwrote the title insurance policy based on the misrepresentation that the property was not encumbered and because HMAC has been allowed a claim based on the priority of its lien, Fidelity has suffered damage as a result of Lineberry's misrepresentation.

Accordingly, Fidelity is entitled to summary judgment against Lineberry as to liability on its cause of action for intentional misrepresentation. Because of the comprehensive relief that Fidelity seeks on this cause of action, the Court reserves for trial the question of how much Fidelity should recover in damages for this claim.

## IV. Negligent Misrepresentation

To make out a claim for negligent misrepresentation, Fidelity must show all of the following elements: "[1] the defendant supplied information to the plaintiff; [2] the information was false; [3] the defendant did not exercise reasonable care in obtaining or communicating the information and [4] the plaintiffs justifiably relied on the information." *Williams v. Berube & Assocs.*, 26 S.W.3d 640, 645 (Tenn. Ct. App. 2000). As set forth in the preceding section, based

on the admitted facts adequately supported by the record, the evidence is sufficient to establish, as a matter of law, all the elements of a claim for negligent misrepresentation. Accordingly, Fidelity is entitled to summary judgment against Lineberry as to liability on its cause of action for for negligent misrepresentation. As with the previous cause of action, the Court reserves for trial the question of how much Fidelity should recover in damages for this claim.

## **CONCLUSION**

For all of the reasons stated, Plaintiff's Motion for Partial Summary Judgment (Docket Entry No. 25) will be granted as to liability.

An appropriate Order shall be entered.

*[signature: Kevin H. Sharp]*

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE