UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 3:11-00253 Judge Sharp |
| 1ST TRUST TITLE, INC.; D. MARK LINEBERRY; L. KEITH WORSHAM, ) ) ) | |
| Defendants. ) | |

### MEMORANDUM

Pending before the Court are cross-motions for summary judgment presenting the issue of whether Defendant L. Keith Worsham is liable to Plaintiff Fidelity National Title Insurance Company for breach of contract and/or negligent misrepresentation as a result of his execution of an Owner's Affidavit and a Borrower's Affidavit in connection with the funding of a construction loan. The Court concludes that the undisputed material facts show he is not, and will, therefore, grant Worsham's Motion for Summary Judgment (Docket No. 114) and deny Fidelity's Motion for Summary Judgment (Docket No. 90).

### I. FACTUAL BACKGROUND

In 2008, Branch Banking & Trust ("BB&T") agreed to loan certain entities controlled by D. Mark Lineberry some $18.7 million so that a building on the property at 315 Union Street in Nashville could be converted into a hotel. At the time, there existed a deed of trust encumbering the property in favor of Prudential Mortgage Capital Company, LLC in the amount of $4,082,978.26.[1]

---

[1] The last trust deed holder of the Prudential Deed was HMAC 99-HI Union Street Office, LLC.

1

In connection with securing the loan, Lineberry and Worsham executed an "Owner's Affidavit and Agreement" that indicated there were no encumbrances on a parcel of land known as "235 3rd Avenue N. Nashville, TN and being more particularly described on Exhibit 'A.'" (Docket No. 1-8 at 2). No "Exhibit A" was attached to the Owner's Affidavit, but in an exhibit attached to the Borrower's Affidavit signed by both Lineberry and Worsham that same day, the property is described as "235 3rd Avenue North and 319 Union Street." (Docket No. 1-9 at 6).

The Owner's Affidavit was signed on August 15, 2008, two weeks before closing on the BB&T loan. At the time of signing, Worsham was the president and sole member of Wesley Tennessee Holdings. His signature appears adjacent to the following language:

> Owner: Union Street Plaza Partners
> by Wesley Tennessee Holdings, LLC as general partner
> By: <u>Keith Worsham</u>
> Title: <u>President</u>

(Docket No. 1-8 at 3). Lineberry's signature appears next to the block that reads:

> Owner: Union Street Plaza Partners
> by Blue Sky Hotels, LLC
> as general partner
> By: <u>D. Mark Lineberry</u>
> Title: <u>President</u>

(Id. at 4).

In the first paragraph of the Owner's Affidavit, the affiants (Worsham and Lineberry) are identified as "the President of Wesley Tennessee Holdings, LLC, general partner and President of Blue Sky Hotels, LLC, general partner of Union Street Plaza Partners ('Owner') a Tennessee general partnership[.]" (Id. at 2). The Owner's Affidavit concludes with the following language directly above the signature blocks:

> The undersigned makes this Owner's Affidavit and Agreement for the purpose of

inducing Fidelity National Title Insurance Company to issue a policy or policies of title insurance, knowing that Fidelity National Title Insurance Company will rely upon the truth of the statements herein made, and the undersigned expressly agrees to indemnify and hold Fidelity National Title Insurance Company harmless from any and all loss arising from any inaccuracies contained herein.

(Id. at 3).[2]

At all times leading up to the closing of the BB&T loan, Lineberry was President of 1st Trust Title, which was a title agent (or policy issuing agent) in Tennessee for Fidelity pursuant to an Issuing Agency Contract dated May 16, 2007. In that capacity, 1st Title was responsible (and Fidelity relied on it) for title searches, issuing title policies and endorsements, and maintaining title files.

The Issuing Agency Contract also listed both the duties of, and the limitations on, the agent, including those relating to closings. Specifically, Paragraph 4G provided:

> G. In those instance where Agent closes real estate transactions and receives and disburses funds of others, Agent shall:
>
> > (I) maintain said funds safely in accounts fully insured by an agency of the Federal Government and in accordance with applicable state law;
> > (ii) maintain separate from Agent's personal or operating accounts all funds received by Agent from any source in connection with transaction(s) in which Principal's title insurance is involved;
> > (iii) disburse such funds only for the purposes for which they were entrusted;
> > (iv) maintain an escrow ledger for each title insurance order involving fiduciary funds, which ledger shall separately reflect the escrow activity for each order;

---

[2] In an Affidavit filed in this case, Worsham claims that prior to his signing the Owner's Affidavit, Lineberry represented to him that he (Lineberry) was not aware of any deeds of trust or other matters that could constitute a lien on any of the parcels of land associated with the property. He also claims that Lineberry told him the Owner's Affidavit would be held in escrow until the time of closing, and that the Owner's Affidavit would not to be submitted to any third party unless all indebtedness relating to the parcels of land associated with the property that was the subject of the BB&T Loan had been paid in full and satisfied.

3

> (v) maintain a control account showing total fiduciary liability for each escrow bank account; and
>
> (vi) reconcile monthly the control account and ledger records to the monthly bank statement.

(Docket No. 115-1 at 21).

A commitment to issue title insurance[3] effective July 9, 2008, was issued by 1st Title as the title issuing agent for Fidelity. At the time the commitment was issued, Fidelity, through its agent 1st Title, was aware of the outstanding Prudential Deed of Trust. This was before Worsham signed the Owner's Affidavit.

In connection with the closing of the BB&T Loan, an attorney working for BB&T provided 1st Title with an "Escrow Closing Instruction Letter" dated August 28, 2010. That letter required 1st Title to confirm in writing to counsel its receipt of the "Borrower's Remaining Equity Requirement" prior to funding by BB&T. The Closing Statement agreed upon by the parties (and incorporated into the Escrow Closing Letter) showed 1st Title as the disbursement agent for the loan and showed the "Borrower's Remaining Equity Requirement" to be the sum of $5,176,507.0, the bulk of which ($4,082,978.26) was the payoff amount on the Prudential Deed of Trust. 1st Title, through its Vice President Delana Thompson, executed the Closing Instruction Letter, and, in so doing, represented that the Prudential Loan would be paid off prior to disbursement of the loan proceeds.

1st Title acted as both the disbursement and escrow agent for the BB&T loan. BB&T provided funds in the amount of $4,151,220.98 to be delivered to 1st Title to be disbursed pursuant

---

[3] Commitments to issue title insurance are issued prior to closing, set out matters as they exist before closing, list what will or what will not be insured in the title policy itself, and set out such information as the type of policy to be issued, the holder of the estate to be insured, the property being insured, and the policy coverage amounts. Commitments also list the requirements that must be met before a final policy will be issued, and exceptions or matters affecting the title that will appear in the final policy when it is issued.

to the terms of the Escrow Instruction Letter and the Closing Statement. The Loan Closing Statement required that the Borrowers contribute $5,176,507.00 (the remaining equity) to pay off and satisfy the prior trust deeds encumbering the property.

On the day of closing, August 29, 2008, at the direction of Lineberry, Thompson emailed counsel for BB&T, stating 1st Title "ha[d] received the $5,176,507.00." This was untrue as 1st Title lacked sufficient funds from the borrowers to close the BB&T loan. Consequently, the Prudential Deed of Trust was not paid and satisfied as required by the Escrow Instruction Letter and Closing Statement. Ultimately, Fidelity satisfied the Prudential trust deed in full by paying $4,157,777.69 after the borrowers defaulted on the BB&T loan.

At least two civil cases and a criminal indictment resulted from 1st Title's misrepresentation in relation to the purported pay-off of the Prudential Deed of Trust and subsequent default. In this case, Fidelity sues 1st Title, Lineberry, and Worsham. Defaults have been entered as to both 1st Title and Lineberry, leaving the claims against Worsham, which are the subject of the pending cross-motions for summary judgment.

## II. STANDARD OF REVIEW

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." Ferro Corp. v. Cookson Group, PLC, 585 F.3d 946, 949 (6th Cir. 2009). A party may obtain summary judgment if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477

U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in his or her favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. APPLICATION OF LAW

Two counts of the Amended Complaint are directed at Worsham. In Count III, both Worsham and Lineberry are alleged to have made negligent misrepresentations in both the Owner's and Borrower's Affidavit. Count X is a claim for contractual indemnity against those same Defendants based upon the indemnity clause in the Owner's Affidavit.

As a preliminary matter, the parties dispute whether the property securing the BB&T loan was the property that was the subject of the Owner's and Borrower's Affidavits. Fidelity claims that "[t]he subject real property is known as 315 Union Street, which is comprised of 235 3rd Avenue North and 219 Union Street" in Nashville (Docket No. 115-1 at 1). Worsham claims that the subject property as set forth in the Owner's Affidavit is "235, 3rd Avenue North," and that the property that was the subject of the BB&T loan is collectively known as 315 Union Street, consisting of two parcel of land, 301 and 315 Union Street. Assuming this dispute is genuine, it does not preclude summary judgment in Worsham's favor because Fidelity cannot establish either its breach of contract or negligent misrepresentation claims for other independent reasons.

**A. Breach of Contract**

Count X is a claim for contractual indemnity against both Lineberry and Worsham and alleges that, in the Owner's Affidavit, "both expressly agreed to indemnify and hold [Fidelity] harmless for any and all loss arising from any inaccuracies contained" in the Owner's or Borrower's Affidavit. (Docket No. 10, Am. Comp. ¶ 111).

6

"'The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract.'" Ingram v. Cendant Mobility Fin. Corp., 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006) (quoting ARC LifeMed, Inc. v. AMC-Tenn., Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). "To prevail on any breach of contract claim, the plaintiff must prove all elements." Hampton v. Macon Cnty Bd. or Ed., 2014 WL 107971, at *9 (Tenn. Ct. App. 2014). Here, Fidelity's breach of contract claim fails because it has not established either the first or third element of such a claim.

"A contract, either written or oral, 'must result from a meeting of the minds of the parties in mutual assent to the terms[.]'" Patty v. Lane, 2013 WL 3421928, at *5 (Tenn. Ct. App. July 3, 3013) (quoting, Higgins v. Oil, Chem. and Atomic Workers Int'l Union, 811 S.W.2d 875, 879 (Tenn. 1991)). After all, "[a] cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties." Christenberry v. Tipton, 160 S.W.3d 487, 494 (Tenn. 2005).

Fidelity seeks to hold Worsham personally liable based upon his signing of the Owner's Affidavit containing the indemnification clause. Worsham argues that would be improper because he signed the Owner's Affidavit in a representative capacity, as President of Wesley Tennessee Holdings, LLC.

"In most cases, a representative who signs a contract is not personally bound to the contract." 84 Lumber Co. v. Smith, 356 S.W.3d 380, 382 (Tenn. 2011). This is in keeping with Tennessee's "rule that a corporate officer's signature, preceded by the corporations' name and followed by words denoting the officer's representative capacity, binds only the corporation." McNauthgen v. Lunan, 2010 WL 1956996, at *5 n.6 (Tenn. Ct. App. May 14, 2010). In fact, there is a presumption that a

contract is signed in a representative capacity when, in the signature block, the corporation's name first appears, followed by the words "by" or "per," followed by the officer's signature and his title. Creekside Part. v. Scott, 2013 WL 139573, at *3 (Tenn. Ct. App. Jan. 10, 2013).

Here, the clear intent of the parties as evidence in the Owner's Affidavit is that the agreement to indemnify was made by Worsham in a representative capacity. In the Owner's Affidavit, the affiants and owners are described as the "the President of Wesley Tennessee Holding, LLC, general partner and President of Blue Sky Hotels, LLC, general partner of Union Street Plaza Partners," and the affiants are said to be "qualified and authorized to make and deliver this Owner's Affidavit and Agreement on behalf of Owner binding Owner to the matters, agreement and indemnities contained herein." (Docket No. 1-8 at 2). Moreover, Worsham signed the affidavit on behalf of "Owner: Union Street Plaza partners by Wesley Tennessee Holdings, LLC as general partner" in his capacity as President of Wesley Tennessee Holdings. (Id. at 3). Accordingly, Fidelity's breach of contract claim fails because it cannot establish that it had a contract with Worsham individually.

The breach of contract claim also fails because Fidelity cannot show damages caused by the breach of the Owner's Affidavit. "'[A] plaintiff is entitled to recover damages for breach of contract if defendant's breach of contract was the direct and proximate cause of the damages which plaintiff allegedly sustained, without the contributing fault of the plaintiff.'" Underwood v. Nat'l Alarm Serv., Inc., 2007 WL 1412040, at *5 (Tenn. Ct. App. May 17, 2007) (citation omitted). That is to say, "[i]n a breach of contract action, damages resulting from the breach are a necessary element of the claim[.]" Buttrey v. Holloway's, Inc., 2012 WL 6451802, at *7 (Tenn. Ct. App. Dec. 12, 2012) (collecting cases).

Worsham's execution of the Owner's Affidavit did not directly or proximately cause the

8

damages sustained by Fidelity in having to pay off the deed of trust. What led to Fidelity's damages were 1st Trust's repeated representations that the loan would close with sufficient borrower funds in hand and, later, that those funds were on hand. In fact, in its own Statement of Facts, Fidelity claims:

> Pursuant to the contractual obligations under the BB&T Policy, Fidelity satisfied the HMAC trust deed in full, *paying a sum in excess of $4,158,777.69* plus interest at the statutorily-allowed rate, *as a direct result of 1st Trust's misrepresentations*.

(Docket No. 91 at 5) (emphasis added). Moreover, the existence of the Prudential Deed of Trust was known to Fidelity prior to closing, meaning that Worsham's alleged misstatement could not have been the cause of Fidelity's damages.

## B. **Negligent Misrepresentation**

Count III alleges negligent misrepresentation against all three Defendants. More specifically as to Worsham, Fidelity alleges that he and Lineberry negligently misrepresented that no liens on the property existed, and that it "reasonably relied and acted on Lineberry and Worsham's Owner's and Borrower's Affidavit, allowing the BB&T Policy to be issued." (Docket No. 10, Am. Com. ¶ 64).

Tennessee courts "recognize[] the common-law tort of negligent misrepresentation and have adopted the Restatement (Second) of Torts § 552 (1977) as the guiding principle with regard to these claims." Hodge v. Craig, 382 S.W.3d 325, 343 (Tenn. 2012) The Restatement provides, in relevant part:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or

9

communicating the information.

Restatement (Second) of Torts § 552 (1977) . Thus, "[a] claim for negligent misrepresentation requires a showing that: 1) the defendant was acting in the course of a transaction in which it had a pecuniary interest; 2) the defendant supplied faulty information meant to guide others in their business transaction; 3) the defendant failed to exercise reasonable care in obtaining or communicating the information; and 4) the plaintiff justifiably relied upon the information." Apollo Hair Sys. of Nashville, Inc. v. Micromode Med. Ltd., 2012 WL 5991779, at *8 (Tenn. Ct. App. Nov. 29, 2012) (citing John Martin Co. v. Morse/Diesel Co., 819 S.W.2d 428, 431 (Tenn. 1991)).

Arguably, Fidelity's negligent misrepresentation claim against Worsham fails for the threshold reason that it cannot establish that Worsham supplied information to it. Even leaving aside Worsham's self-serving statement that Lineberry told him the Owner's Affidavit would be held in escrow, the representations may be said to have been made by Wesley Tennessee Holding LLC, since Worsham signed the document in a representative capacity. Regardless, the negligent misrepresentation claim fails because Fidelity cannot show that its loss was caused by a justifiable reliance on the representations made in the Owner's Affidavit.

"An essential requirement of any action for fraud, deceit, failure to disclose or negligent or innocent misrepresentations is detrimental reliance on a false premise." William v. Berube & Assoc., 26 S.W3d 640, 645 (Tenn. Ct. App. 2000) (collecting cases). "The burden is not upon the defendant to show that it was not negligent, but rather, the burden is upon the plaintiff to show that its reliance upon any statements defendants may have made was reasonable." Id. In other words, "[a] false representation alone does not amount to fraud; there must be a showing by plaintiff that the representation was relied on by him or her, and that the reliance was reasonable under the

circumstances." Homestead Grp., LLC v. Bank of Tennessee, 307 S.W.3d 746, 752 (Tenn. Ct. App. 2009). "Justifiable reliance is not blind faith and there is no duty to disclose a fact if ordinary diligence would have revealed it." Id.

Fidelity could not have reasonably relied upon Worsham's representation about the non-existence of liens because it knew through its agent, 1st Title, about the existence of the Prudential Deed of Trust prior to execution of the Owner's Affidavit, prior to closing, and prior to issuing a title policy. Instead, what Fidelity relied upon, and the source of its damages, was the representation of its own agent, 1st Title, that the Prudential Deed of Trust would be paid off at closing.

## IV. **CONCLUSION**

On the basis of the foregoing, Fidelity's Motion for Summary Judgment will be denied, and Worsham's Motion for Summary Judgment will be granted. An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE